UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X
                         :

TIMOTHY D. MURPHY,             :
                  Plaintiff,   :
                         :

          -v-             :           15-CV-7256 (VSB)
                         :

GERALD MORLITZ, ET AL.,       :       **MEMORANDUM & OPINION**
                         :
               Defendants.  :
                         :
---------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __9/21/2017__

Appearances:

Timothy D. Murphy
Riverside, California
*Plaintiff Pro Se*

Andrew R. Jones
Rachel Aghassi
Furman Kornfeld & Brennan LLP
New York, New York
*Counsel for Defendant Gerald Morlitz*

James R. Anderson
Smith, Buss & Jacobs, LLP
Yonkers, New York
*Counsel for Defendants RAI Premium Finance,
LLC and RAI Insurance Group*

VERNON S. BRODERICK, United States District Judge:

        Pro se Plaintiff Timothy Murphy brings this action for damages, the imposition of a

constructive and/or resulting trust, and an accounting against Defendants Gerald Morlitz, the

Robert H. and Shirley S. Murphy Survivorship Trust dtd 11-1-05 (the "Trust"), RAI Premium

Finance, LLC, and RAI Insurance Group (the "RAI Defendants") (collectively, "Defendants"),

alleging claims arising out of his parents' life insurance policy and the survivorship trust that

originally held the interest in that policy.  Before me are Defendant Morlitz's motion to dismiss

Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6), (Doc. 67), and the RAI

Defendants' motion to dismiss Plaintiff's complaint under Rules 12(b)(1) and 12(b)(6), (Doc.

70).[1]  Because I find that Plaintiff's claims are time-barred, Defendants' motions to dismiss are

granted with prejudice.

## I.    **Background**[2]

In 2005, Defendant Morlitz advised American General Life Insurance Co. ("AGL") that a

$5,000,000 life insurance policy would be purchased to insure Robert H. Murphy and Shirley S.

Murphy, Plaintiff's parents (the "Policy").  (Compl. ¶¶ 1, 12.)[3]  Morlitz further informed AGL

that the beneficiaries of the Policy would be Robert and Shirley Murphy's children, including

Plaintiff, who would be designated through an Irrevocable Life Insurance Trust ("ILIT"),

administered by Morlitz as trustee, financed by the RAI Defendants, and ultimately named the

Robert H. and Shirley S. Murphy Survivorship Trust dtd 11-1-05.  (*Id.* ¶¶ 1, 12, 14.)  On

September 20, 2005, AGL underwrote the Policy, which required a surrender of approximately

$199,000.  (*Id.* ¶¶ 28, 109.)  The beneficiary of the Policy was the Trust.  (*Id.* ¶ 29.)  No later

than December 2005, Mortliz provided financial information relevant to the Policy to certain

individuals, including Mitchell K. Smith, a principal of the Gaines & Smith Financial Group,

insurance agents on the Policy; AGL, the underwriter of the Policy; and Plaintiff's siblings, the

---

[1] Although the RAI Defendants' motion to dismiss was originally brought under Rules 12(b)(1) and 12(b)(6), Plaintiff later filed a stipulation of voluntary dismissal as to a former Defendant, CNF II LLC ("CNF"), whose presence in the action destroyed diversity.  As such, the RAI Defendants replaced their Rule 12(b)(1) argument with one under Rules 12(b)(7) and 19, alleging that CNF is a necessary and indispensable party such that, given the infeasibility of joinder, dismissal is warranted.

[2] I assume as true the facts alleged in Plaintiff's Complaint, as well as those included in Plaintiff's submission opposing the motion to dismiss.  *See Henning v. N.Y.C. Dep't of Corr.*, No. 14-CV-9798 (JPO), 2016 WL 297725, at *3 (S.D.N.Y. Jan. 22, 2016) ("Although this allegation appears in his opposition papers, the Court—consistent with its duty to liberally construe *pro se* pleadings—will credit Plaintiff's assertion in evaluating the sufficiency of his complaint.").  My references to the allegations in the complaint and Plaintiff's submission should not be construed as a finding as to their veracity, and I make no such findings.

[3] "Compl." refers to the complaint filed in this action on September 9, 2015 ("Complaint").  (Doc. 1.)

other beneficiaries. (*Id.* ¶¶ 13–14.) It is not apparent whether Morlitz provided the same financial information to Plaintiff.

Morlitz also made multiple disclosures to AGL and Smith regarding the Trust, including that the "sole purpose" of the Trust was to distribute the trust property to its beneficiaries after the deaths of both Robert and Shirley Murphy and that the sole trust property was to be the Policy. (*Id.* ¶ 14.) Plaintiff also alleges that Morlitz informed AGL that regardless of the beneficiary designation reflected in AGL's records, the interest was held by the beneficiaries of the Trust. (*Id.* ¶ 15.) In any event, Defendants have yet to produce an "accurate, complete copy" of the Policy. (*Id.* ¶ 16.)

Although Plaintiff states that he was not aware of the Trust, he had knowledge of the sale of the Trust's interest in the Policy, and claims that despite his refusal to consent to the transaction and Defendants' knowledge of his refusal, in or about August 2008, Morlitz, the RAI Defendants, and the Trust sold the Policy to CNF (the "Sale"). (*Id.* ¶¶ 21, 113.) Plaintiff claims that Morlitz had a prior relationship with a principal of CNF. (*See* Pl.'s Morlitz Opp. 4.)[4] At the time of the Sale, Defendants did not disclose any information regarding the Sale to Plaintiff. (Compl. ¶ 21.)

The decision and process that led to the Sale began in or about December 2007. (*Id.* ¶¶ 33, 50, 65, 97.) In approximately July 2008, the RAI Insurance Group offered $810,000 to Morlitz and Smith to purchase the Policy from the Trust. (*Id.* ¶¶ 34, 51, 66, 84.) The offer was not disclosed to Plaintiff. (*Id.* ¶¶ 34, 51, 66, 84.) On or about July 7, 2008, CNF executed an agreement to purchase the Policy from the Trust for $716,865. (*Id.* ¶¶ 35, 52, 67, 85, 98.) Smith

---

[4] "Pl.'s Morlitz Opp." refers to the Opposition to Motion of Defendant Gerald Morlitz to Dismiss Per FRCP 12(b). (Doc. 78.)

sent a "Beneficiary's Consent to Transfer of Policy, Waiver of Interest and Release of Claims" form ("Beneficiary Consent Form") regarding the Sale to Plaintiff requesting his signature in July 2008, which Plaintiff never signed.  (*Id.* ¶¶ 36, 53, 68, 86, 99.)

Plaintiff further alleges that in or around December 2008, Defendant Morlitz obtained waivers and indemnity agreements from Mark Murphy, Claudia Semplenski, Phillip Murphy, Shane Murphy, David Murphy, Robert H. Murphy, and Shirley S. Murphy to facilitate the distribution of proceeds from the Sale and shield Morlitz from liability.  (*Id.* ¶ 25.)  The proceeds were distributed to Plaintiff's siblings and to the Trust, but not to Plaintiff.  (*Id.* ¶¶ 38, 54, 69, 100, 114.)  Some portion of the proceeds were also distributed to Morlitz in or about December 2008.  (*Id.* ¶ 72.)  Plaintiff claims that Defendants Smith, Gaines & Smith Financial Group and Mark Murphy were aware that the distribution of the proceeds was a violation of Plaintiff's rights, but still agreed to and shared in the Sale's proceeds while concealing their conduct from Plaintiff.  (*Id.* ¶ 26.)

Plaintiff's mother, Shirley Murphy, passed away on January 27, 2009.  (*Id.* ¶ 17.)  Plaintiff wrote in February 2009 to AGL to request payment of the life insurance benefits.  (*Id.*)  Plaintiff claims he did not know about the Trust until 2015, and therefore did not write to Morlitz.  (*Id.*)  On January 5, 2010, AGL's legal department wrote to Plaintiff to inform him that the Policy was a "last to die" policy such that no benefits would be payable until Plaintiff's father died, and also told Plaintiff that he was not listed as an owner or beneficiary of the Policy.  (*Id.* ¶ 18.)  AGL did not disclose the existence of the Trust to Plaintiff.  (*Id.* ¶¶ 18–19, 41.)

Plaintiff's father, Robert Murphy, passed away on February 26, 2013.  (*Id.* ¶ 23.)  On April 28, 2013, Plaintiff requested that AGL pay out his benefits, and AGL refused.  (*Id.* ¶¶ 23,

42.)

## II.    <u>**Procedural History**</u>

Plaintiff commenced this action by filing his Complaint on September 9, 2015 against Defendants and CNF.  (Doc. 1.)  On October 30, 2015, I issued an order directing Plaintiff to show cause by filing an affirmation as to why the action should not be dismissed for lack of subject matter jurisdiction, (Doc. 4), and Plaintiff filed the requested affirmation on November 17, 2015, (Doc. 11).

On March 21, 2016, prior to the initial pretrial conference in this matter, Defendant Morlitz filed a pre-motion letter in anticipation of filing a motion to dismiss, (Doc. 55), and on March 22, 2016, Plaintiff responded, (Doc. 56).  After I converted the initial pretrial conference, set for April 7, 2016, to a pre-motion conference, (Doc. 57), the RAI Defendants and CNF filed their own pre-motion letter requesting that their anticipated motion to dismiss be considered during the same conference, (Doc. 58).  I granted their request, (Doc. 59), and on April 7, 2016, held a pre-motion conference addressing both motions to dismiss, (*see* Dkt. Entry Apr. 7, 2016).

On April 25, 2016, Defendant CNF separately filed a pre-motion letter in anticipation of filing a motion to dismiss under Rule 12(b)(1) for lack of diversity jurisdiction.  (Doc. 62.)  Morlitz filed a motion for an extension of time to file his motion to dismiss, which I granted on April 29, 2016.  (Doc. 65.)  I set and held a pre-motion conference on May 12, 2016, (Doc. 63), and entered an order later that day modifying the briefing schedule and setting a date by which Plaintiff was to submit a letter addressing the basis for his request for jurisdictional discovery, (Doc. 66).  In accordance with that schedule, Morlitz filed his motion to dismiss on May 12, 2016.  (Docs. 67–69.)  After Plaintiff requested an extension of time, which was granted, (Doc. 79), Plaintiff filed his opposition on July 5, 2016, (Doc. 78).  Defendant Morlitz then filed a

reply on July 20, 2016. (Doc. 80.)

The RAI Defendants and CNF filed their motion to dismiss on June 3, 2016, (Docs. 70, 74–75).[5] On June 7, 2016, Plaintiff submitted a letter setting forth the basis for his request for jurisdictional discovery, (Doc. 73), and I granted Plaintiff's request on June 15, 2016, (Doc. 76).

On August 4, 2016, Plaintiff filed a notice of voluntary dismissal under Rule 41(a)(1)(A)(i) as to CNF, (Doc. 81). On August 6, 2016, Plaintiff submitted his opposition to the RAI Defendants' and CNF's motion to dismiss, (Doc. 82), and on August 29, 2016, the RAI Defendants filed their reply, arguing that even though CNF was no longer in a defendant, the case should still be dismissed pursuant to Rules 12(b)(7) and 19 because CNF is a necessary and indispensable party, (Doc. 83).

## III.    <u>Legal Standard</u>

### A.    *Rule 12(b)(7) Motion to Dismiss*

Motions to dismiss filed pursuant to Rule 12(b)(7) are subject to a "two-step test [under Rule 19] for determining whether the court must dismiss an action for failure to join an indispensable party." *Berkeley Acquisitions, LLC v. Mallow, Konstam & Hager, P.C.*, 262 F.R.D. 269, 272 (S.D.N.Y. 2009) (quoting *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000)). First, a court must determine whether the party is "necessary" within the meaning Rule 19(a), which provides that a party should be joined, if feasible, where:

> (1) In the person's absence complete relief cannot be accorded among those
> already parties, or (2) the person claims an interest relating to the subject of
> the action and is so situated that the disposition of the action in the person's
> absence may (i) as a practical matter impair or impede the person's ability
> to protect that interest or (ii) leave any of the persons already parties subject
> to a substantial risk of incurring double, multiple, or otherwise inconsistent

---

[5] The RAI Defendants and CNF appear to have encountered some difficulty filing their memorandum of law and affidavit on June 3, 2016, and successfully filed those documents on June 14, 2016.

obligations by reason of the claimed interest.

*Viacom*, 212 F.3d at 724. Second, if a party is necessary and "joinder of the absent party is not feasible for jurisdictional or other reasons," the court must then determine whether the party is "indispensable" under Rule 19(b). *Id.* at 725. Under Rule 19(b), "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). The Rule provides that courts should consider a number of factors, including:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). These factors are not exhaustive. *See* Fed. R. Civ. P. 19 advisory committee's note to 1966 amendment ("The factors are to a certain extent overlapping, and they are not intended to exclude other considerations which may be applicable in particular situations."). "[V]ery few cases should be terminated due to the absence of nondiverse parties unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible." *Visión en Análisis y Estrategia, S.A. de C.V. v. Andersen*, No. 14-CV-8016 (SAS), 2015 WL 4510772, at *4 (S.D.N.Y. July 24, 2015) (quoting *Universal Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, 312 F.3d 82, 87 (2d Cir. 2002)), *reconsideration denied*, 2015 WL 5853822 (S.D.N.Y. Oct. 7, 2015), *aff'd sub nom. Visión en Análisis y Estrategia, S.A. v. Andersen*, 662 F. App'x 29 (2d Cir. 2016). A court may consider materials outside of the pleadings when considering a motion pursuant to Rule 12(b)(7). *See Dunmann Realty, LLC v. Faust*, 267 F.R.D. 101, 101 n.1 (S.D.N.Y. 2010) ("When reviewing a motion to dismiss under

Rule 12(b)(7), the Court may consider documents and facts outside the pleadings.").

### B.     *Rule 12(b)(6) Motion to Dismiss*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011). Moreover, "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation and quotation marks omitted).

### IV.     <u>Discussion</u>

Plaintiff brings causes of action for breach of fiduciary duty and conversion against Defendants Morlitz and the Trust, and constructive fraud against Defendant Morlitz.  (Compl. ¶¶ 27–61, 82–93.)  He also brings causes of action against all Defendants for money had and received, constructive trust, resulting trust, and conspiracy regarding the same, interference with an economic advantage, and for an accounting.  (*Id.* ¶¶ 62–81, 94–117.)  Defendants seek dismissal because:  (1) CNF is an indispensible party; (2) the claims are time-barred; and (3) the

Complaint fails to state a claim. (*See* RAI Mem.; RAI Reply; Morlitz Mem.)[6] I address the first two arguments below. However, because I conclude that Plaintiff's claims are time-barred, I do not address Defendants' final argument that the Complaint fails to state a claim.

### A. *Joinder of CNF*

CNF is a necessary party under Rule 19(a). Indeed, CNF, through its shared counsel with the RAI Defendants, has affirmatively stated an interest relating to the subject of the action. (*See* RAI Defs.' Reply 5–9.) In addition, CNF's relative position among Defendants with regard to Plaintiff's allegations make it likely that adjudicating this action in CNF's absence may impede its ability to protect its interest in the litigation, which appear to be extensive given the numerous claims originally asserted against it. CNF is "directly implicated" in the Complaint, as Plaintiff repeatedly alleges that CNF was part of a scheme or conspiracy to deprive Plaintiff of his entitlements by participating in the Sale while knowing that Plaintiff was a beneficiary to the Policy and had not waived or released his rights. (*See* Compl. ¶¶ 4, 21–22, 35, 37–38, 52–53, 55, 67–68, 71, 85–86, 97–99, 101, 113.) *See Visión*, 2015 WL 4510772, at *5. In fact, even after voluntarily dismissing CNF as a party, Plaintiff continues to reference CNF in his opposition when describing the alleged conspiracy.[7] (*See* Pl.'s RAI Opp. 3, 4–5.)[8] This is not surprising, given that all of the claims currently brought against the RAI Defendants were formerly asserted against CNF as well. Additionally, as the purchaser of the interest in the

---

[6] "RAI Mem." refers to the Memorandum of Law in Support of Fed. R. Civ. P. 12(b)(1) and 12(b)(6) Motion to Dismiss of Defendants CNF II, LLC, RAI Premium Finance, LLC, and RAI Insurance Group LLC. (Doc. 75.) "RAI Reply" refers to the Reply Memorandum of Law in Support of Fed. R. Civ. P. 12(b)(1) and 12(b)(6) Motion to Dismiss of Defendants CNF II, LLC, RAI Premium Finance, LLC, and RAI Insurance Group LLC. (Doc. 83.) "Morlitz Mem." refers to the Memorandum of Law in Support of Federal Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaint by Defendant Gerald Morlitz. (Doc. 68.)

[7] Indeed, notwithstanding Plaintiff's stipulation of voluntary dismissal, counsel for the RAI Defendants also filed the reply on behalf of CNF to assert its interest.

[8] "Pl.'s RAI Opp." refers to the Opposition to Motion of RAI Defendants to Dismiss – FRCP 12(b). (Doc. 82.)

Policy, CNF was clearly involved in the very Sale that Plaintiff claims was improper. Based upon the allegations in the Complaint and in Plaintiff's opposition papers, CNF is clearly implicated in the alleged conspiracy, and given that Plaintiff only dismissed his claims against CNF without prejudice, (*see* Doc. 81), any findings here could directly impact CNF.

As CNF's presence would destroy diversity jurisdiction, the joinder of CNF is not "feasible." *See Berkeley*, 262 F.R.D. at 270 ("Because their joinder would defeat diversity, it is not feasible to add them as defendants . . . ."). However, because I find that CNF is not an indispensable party under Rule 19(b), dismissal under Rule 12(b)(7) is not warranted. In considering the applicable factors, I note that the only non-conclusory allegations against CNF in the Complaint are that (1) CNF purchased an ownership interest in the Policy, including by executing documents and negotiating modes of payment, and (2) CNF knew that Plaintiff was a beneficiary of the Trust with an interest in the Policy and had not consented to the Sale. (*See* Compl. ¶¶ 4, 22, 35, 37, 39, 52–53, 55, 67–68, 71, 74, 85–86, 97–99, 101, 113.) In his opposition, Plaintiff further alleges that Defendant Morlitz knew a principal of CNF. Considering the conclusory nature of the allegations asserting misconduct by CNF, the likelihood of any prejudice to CNF, which was barely implicated in the Complaint beyond these conclusory allegations, is minimal at best.

With respect to the second factor under Rule 19(b), any potential prejudice could be lessened by "the shaping of relief" or by intervention. *See* Fed. R. Civ. P. 19 advisory committee's note to 1966 amendment. In sum, a consideration of the factors and the context of the case guide my denial of the RAI Defendants' motion to dismiss under Rule 12(b)(7). *See Prescription Plan Serv. Corp. v. Franco*, 552 F.2d 493, 497 (2d Cir. 1977) (reversing district court's decision that two trustees were indispensable and finding no "serious possibility of

prejudice" where "[t]he interests of the two groups are identical, counsel for those remaining in the case will be no less vigorous in their advocacy because they represent two fewer persons, and any judgment for the appellant would almost certainly be satisfied out of the Plan's, not the individuals', assets").

## B.    *Timeliness of Plaintiff's Claims*[9]

A defendant may raise a limitations argument in a motion to dismiss "if the defense appears on the face of the complaint." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008). Additionally, regardless of the cause of action, "[w]here jurisdiction rests upon diversity of citizenship, a federal court sitting in New York must apply the New York choice-of-law rules and statutes of limitations." *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998). Under New York's borrowing statute, N.Y. C.P.L.R. § 202, "when a nonresident plaintiff sues upon a cause of action that arose outside of New York, the court must apply the shorter limitations period, including all relevant tolling provisions, of either: (1) New York; or (2) the state where the cause of action accrued." *Thea v. Kleinhandler*, 807 F.3d 492, 497 (2d Cir. 2015) (quoting *Stuart*, 158 F.3d at 627). New York identifies accrual "at the time and place of the injury," which, when addressing a "purely economic" injury, is "where the plaintiff resides and sustains the economic impact of the loss." *Id.* at 498 (quoting *Global Fin. Corp. v. Triarc Corp.*, 693 N.Y.S.2d 479 (1999)). An action accruing outside of New York "must meet the statutes of limitations of both jurisdictions," meaning that the foreign jurisdiction's statute of limitations will apply if it bars the claims. *Id.* at 499 (citing *Ins. Co. of N. Am. v. ABB Power*

---

[9] For the most part, the RAI Defendants' motion to dismiss Plaintiff's Complaint as untimely simply joins or includes arguments also expressed in Defendant Morlitz's motion. (RAI Mem. 7, 10, 13; RAI Reply 9–10.) For this exact reason, Plaintiff's opposition to the RAI Defendants' motion to dismiss explains that in light of the RAI Defendants' reliance on Morlitz's motion, Plaintiff incorporates his arguments stated in opposition to Morlitz's motion. (Pl.'s RAI Opp. 6.) As a result, all references will be to the papers submitted in connection with Defendant Morlitz's motion to dismiss.

*Generation, Inc.*, 668 N.Y.S.2d 143 (1997)).

Here, however, all parties refer exclusively to New York law in their respective papers submitted in connection with the motions to dismiss. Therefore, I "deem the parties to have implicitly consented to having New York law apply, and this implied consent . . . is sufficient to establish choice of law on the question." *Sabilia v. Richmond*, No. 11 Civ. 739 (JPO)(MHD), 2011 WL 7091353, at *10 n.8 (S.D.N.Y. Oct. 26, 2011) (quoting *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 327, 341–42 (S.D.N.Y. 2010)), *report and recommendation adopted,* 2012 WL 213656 (S.D.N.Y. Jan. 24, 2012).

### 1. Breach of Fiduciary Duty

In New York, the statute of limitations period for a breach of fiduciary duty claim "depends on the substantive remedy which the plaintiff seeks." *Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 942 (2d Cir. 1998) (quoting *Loengard v. Santa Fe Indus., Inc.*, 519 N.Y.S.2d 262, 266 (1987)). A breach of fiduciary duty claim seeking only money damages—as Plaintiff's claim does here—is subject to a three-year limitations period. *See id.*; *see also Ciccone v. Hersh*, 530 F. Supp. 2d 574, 579 (S.D.N.Y. 2008) ("Where a plaintiff alleging breach of fiduciary duty 'seeks only money damages, courts have viewed such actions as alleging injury to property, to which a three-year statute of limitations applies.'" (citation omitted)), *aff'd*, 320 F. App'x 48 (2d Cir. 2009); N.Y. C.P.L.R. § 214(4). "A claim for breach of fiduciary duty accrues, and the statute begins to run, upon the date of the alleged breach," as long as the claim is not based upon actual fraud. *Ciccone*, 530 F. Supp. 2d at 579 (citing *Bastys v. Rothschild*, No. 97 Civ. 5154, 2000 WL 1810107, at *34 (S.D.N.Y. Nov. 21, 2000)). Here, Defendants argue, and Plaintiff does not dispute, that the date of the alleged breach was August 2008, when the Sale was completed. (*See* Am. Compl. ¶ 37.)

Plaintiff also, however, contends that the statute of limitations period should be tolled because of Defendant Morlitz's non-disclosure, and cites case law supporting the conclusion that tolling applies for the duration of the fiduciary relationship. (*See* Pl.'s Morlitz Opp. 11 (citing *St. John's Univ., N.Y. v. Bolton*, 757 F. Supp. 2d 144 (E.D.N.Y. 2010)).) As Plaintiff suggests, a statute of limitations period generally does not commence until "the fiduciary has openly repudiated his or her obligation or the relationship has otherwise been terminated." *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 518 (2d Cir. 2001). However, "[t]he open repudiation doctrine applies only [] to claims for equitable relief, and not to claims for money damages." *Anderson v. Greene*, No. 14 Civ. 10249 (KPF), 2016 WL 4367960, at *21 (S.D.N.Y. Aug. 10, 2016) (quoting *Willensky v. Lederman*, No. 13 Civ. 7026 (KMK), 2015 WL 327843, at *10 n.21 (S.D.N.Y. Jan. 23, 2015)); *see also Levy v. Young Adult Inst., Inc.*, No. 13-CV-2861 (JPO)(SN), 2016 WL 6092705, at *21 (S.D.N.Y. Oct. 18, 2016); *Bd. of Trs. ex rel. Gen. Ret. Sys. of Detroit v. BNY Mellon, N.A.*, No. 11 Civ. 6345 RJS, 2012 WL 3930112, at *9 (S.D.N.Y. Sept. 10, 2012) ("Unfortunately for Plaintiffs, the open repudiation doctrine is inapplicable to Plaintiffs' claim because the doctrine only applies to the six-year statute of limitations for equitable relief—not the three-year period for monetary damages." (citing *Kaszirer v. Kaszirer*, 730 N.Y.S.2d 87, 88 (1st Dep't 2001))).

As a result, Plaintiff's breach of fiduciary duty claim, which accrued in August 2008, is untimely.

### 2. Conversion

The applicable statute of limitations period for a claim seeking to recover damages for conversion is three years. *See Keep on Kicking Music, Ltd. v. Hibbert*, No. 15cv7464, 2016 WL 4386047, at *5 (S.D.N.Y. Aug. 17, 2016); *Marketxt Holdings Corp. v. Engel & Reiman, P.C.*,

693 F. Supp. 2d 387, 394 (S.D.N.Y. 2010). Ordinarily, "[a]ccrual runs from the date the conversion takes place, and not from discovery or the exercise of diligence to discover." *Vigilant Ins. Co. of Am. v. Housing Auth. of City of El Paso, Tex.*, 637 N.Y.S.2d 342, 347 (1995); *Hibbert*, 2016 WL 4386047, at *5.[10]

As the alleged conversion took place at the time of the Sale, Plaintiff's conversion claim is time-barred.

### 3. Constructive Trust, Resulting Trust, and Conspiracy

The statute of limitations period for a constructive trust claim is six years, and "starts to run upon the occurrence of the wrongful act giving rise to a duty of restitution." *Jaffer v. Hirji*, No. 14-CV-2127 (KMK), 2015 WL 6473033, at *4 (S.D.N.Y. Oct. 27, 2015) (citations omitted); *see also* N.Y. C.P.L.R. § 213 (applying a six-year statute of limitations to actions "for which no limitation is specifically prescribed by law"). "A determination of when the wrongful act triggering the running of the Statute of Limitations occurs depends upon whether the constructive trustee acquired the property wrongfully, in which case the property would be held adversely from the date of acquisition *or* whether the constructive trustee wrongfully withholds property acquired lawfully from the beneficiary, in which case the property would be held adversely from the date the trustee breaches or repudiates the agreement to transfer the property." *Jaffer*, 2015 WL 6473033, at *4 (emphasis in original) (quoting *Tornheim v. Tornheim*, 888 N.Y.S.2d 603, 605 (2d Dep't 2009)).

Here, since Plaintiff alleges wrongful conduct by Defendants related to the life insurance

---

[10] Although New York also applies a "demand-and-refusal rule," under which a claim runs from the time "the true owner makes demand for return of the chattel and the person in possession of the chattel refuses to return it," *Marchig v. Christie's Inc.*, 430 F. App'x 22, 25 (2d Cir. 2011) (summary order) (quoting *Solomon R. Guggenheim Found. v. Lubell*, 567 N.Y.S.2d 623, 626 (1991)), this rule does not apply against an alleged bad faith possessor of the acquisition, *see, e.g.*, *Baiul v. William Morris Agency, LLC*, No. 13 Civ. 8683 (KBF), 2014 WL 1804526, at *11 (S.D.N.Y. May 6, 2014), *aff'd*, 601 F. App'x 58 (2d Cir. 2015); *Grosz v. Museum of Modern Art*, 772 F. Supp. 2d 473, 481–82 (S.D.N.Y. Jan. 6, 2010), *aff'd*, 403 F. App'x 575 (2d Cir. 2010).

policy, I apply the former of the two scenarios, resulting in the Sale in August 2008 being the event triggering the statute of limitations. As such, Plaintiff's claim for constructive trust, resulting trust, and conspiracy regarding the same is time-barred. *See Brady v. Lynes*, No. 05 Civ. 6540(DAB), 2008 WL 2276518, at *9 (S.D.N.Y. June 2, 2008) ("The statute of limitations for civil conspiracy is the same as that for the underlying tort.").

### 4. Constructive Fraud

Generally, the statute of limitations period for constructive fraud is six years, which accrues upon breach. *See Christine Falls Corp. v. U.S. Bank Nat. Ass'n*, 546 F. App'x 13, 16 (2d Cir. 2013) (summary order); *Tenamee v. Schmukler*, 438 F. Supp. 2d 438, 446 (S.D.N.Y. 2006); *Whitney Holdings, Ltd. v. Givotovsky*, 988 F. Supp. 732, 743–44 (S.D.N.Y. 1997).[11] However, "a fraud-based claim will be barred by a shorter statute of limitations if the fraud allegation is 'merely incidental' to a claim with a shorter limitations period." *Marketxt*, 693 F. Supp. 2d at 394; *see also Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 545 (2d Cir. 1999) ("When a fraud claim is incidental to another asserted claim, the claim does not sound in fraud for purposes of taking advantage of the longer limitations period.").

Defendants argue that Plaintiff's constructive fraud claim is essentially subsumed within his conversion claim and, therefore, the three-year statute of limitations period applies. (Morlitz Mem. 12–13.) Here, the breach is the Sale in August 2008, so whether I apply the shorter or longer statute of limitations period, Plaintiff's constructive fraud claim is time-barred.

### 5. Interference with Economic Advantage and Conspiracy

A claim for tortious interference with economic advantage is subject to a three-year

---

[11] Despite Plaintiff's argument to the contrary, "unlike the case of actual fraud the two year discovery rule does not apply" to constructive fraud claims. *Tenamee*, 438 F. Supp. 2d at 446.

statute of limitations period. *See Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 910 (S.D.N.Y. 2016) ("The statute of limitations for tortious interference with business relationships is generally three years."), *reconsideration denied*, 2016 WL 6652733 (S.D.N.Y. Nov. 10, 2016); *Pasqualini v. MortgageIT, Inc.*, 498 F. Supp. 2d 659, 668 (S.D.N.Y. 2007) ("The statute of limitations for a cause of action alleging tortious interference with . . . prospective economic advantage is three years." (citation omitted)). The "claim begins to run when the defendant performs the action (or inaction) that constitutes the alleged interference." *Gym Door Repairs, Inc.*, 206 F. Supp. 3d at 910 (citation omitted).

Plaintiff alleges that the specific action that interfered with his economic advantage was the Sale in August 2008. (*See* Compl. ¶¶ 99–100.) As a result, his tortious interference with economic advantage claim, as well as his claim alleging a conspiracy of the same, is time-barred.

### 6. Accounting

"The statute of limitations in New York . . . for an accounting is generally six years." *Golden Pac. Bancorp*, 273 F.3d at 518. The claim accrues when the duty to pay arises, which is largely dependent on the nature of the case. *See Schochet v. Pub. Nat. Bank of N.Y.*, 221 N.Y.S. 154 (1st Dep't 1927). Thus, when the "duty to pay over arises at once upon the initial payment, the cause of action accrues at once." *Id.* With respect to an accounting claim arising out of a fiduciary relationship, the statute of limitations period for the claim is tolled and does not commence "until the fiduciary has openly repudiated his or her obligation or the relationship has been otherwise terminated." *Golden Pac. Bancorp*, 273 F.3d at 518 (citations omitted). As noted above "[t]he open repudiation doctrine applies only [ ] to claims for equitable relief, and not to claims for money damages." *Willensky*, 2015 WL 327843, at *10 n.21; *see also Kaszirer*, 730 N.Y.S.2d at 88 ("[T]he requirement of a clear repudiation applies only to claims seeking an

accounting or other equitable relief.").

Here, Plaintiff's claim for an accounting is not a standalone claim; rather, it is directly tied to his breach of fiduciary duty claim and exists solely to provide him with a method through which "to recover the amount due of consequential damages, special damages and interest in this matter." (Compl. ¶¶ 111, 114, 117.) Accordingly, the open repudiation doctrine does not operate to toll this claim, *see Anderson*, 2016 WL 4367960, at *22, and Plaintiff's claim for an accounting is time-barred.

### 7. Equitable Estoppel

In an effort to stave off dismissal based upon the running of the limitations periods, Plaintiff argues that Defendants are equitably estopped from asserting that the statute of limitations bars his claims. (Pl.'s Morlitz Opp. 10–12.) Specifically, Plaintiff contends that the "complete non-disclosure" by Morlitz operates to toll the statute of limitations. (*Id.* at 10–11.)

Equitable estoppel is an "extraordinary remedy," which "applies where it would be unjust to allow a defendant to assert a statute of limitations defense." *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 442 (S.D.N.Y. 2014) (citations omitted), *aff'd*, 579 F. App'x 7 (2d Cir. 2014). "Under New York law, the doctrines of equitable tolling or equitable estoppel 'may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.'" *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) (citation omitted). The fraud, misrepresentations, or deception "must be affirmative and specifically directed at preventing the plaintiff from bringing suit; failure to disclose the basis for potential claims is not enough, nor are broad misstatements to the community at large." *Twersky*, 993 F. Supp. 2d at 442. Without such affirmative conduct, a plaintiff must show that there was a fiduciary relationship that created an obligation on the part

of the defendant to inform the plaintiff of the facts underlying the claim.  *See id.*  Additionally, to invoke equitable estoppel, a plaintiff "must also demonstrate reasonable reliance on the defendant's misrepresentations, and due diligence in bringing a claim when the conduct relied upon as the basis for equitable estoppel ceases to be operational."  *Id.* at 442–43; *see also Abbas*, 480 F.3d at 642.

Plaintiff's equitable estoppel claim fails because (1) Plaintiff fails to allege active misrepresentations on the part of Defendants, aside from certain conclusory statements, (*see, e.g.*, Compl. ¶¶ 41, 42), (2) any fiduciary relationship with Morlitz ended on or about the end of 2008, and (3) Plaintiff was informed of the facts underlying his claims, but waited seven years before bringing his Complaint.  Thus, even had there been an ongoing fiduciary relationship and active misrepresentations on the part of Morlitz or any of the Defendants at the time, Plaintiff failed to demonstrate that he exercised the due diligence required when bringing his claims.  *See, e.g.*, *Twersky*, 993 F. Supp. 2d at 448 (no valid equitable estoppel claim because there was no explanation in the complaint as to how the alleged misrepresentations could have prevented the plaintiff from bringing a timely action when he knew of his injury); *Putter v. N. Shore Univ. Hosp.*, 825 N.Y.S.2d 435, 437–38 (2006) (equitable estoppel improper because even though the chief of infectious diseases at the hospital falsely told the plaintiff that his disease was of an unknown origin, plaintiff knew of his injury and still had sufficient information to investigate whether he had a medical malpractice action); *Zumpano v. Quinn*, 816 N.Y.S.2d 703, 705–07 (2006) (reassigning priests to new dioceses, failing to report allegations of abuse to law enforcement officials, and making private payments to complainants to prevent publicizing of sexual abuse not enough to invoke equitable estoppel in claim brought for sexual abuse).

For the foregoing reasons, Defendants are not equitably estopped from asserting that the

statute of limitations bars Plaintiff's claims.  Plaintiff's claims are thus time-barred.

### C.    *Dismissal With Prejudice*

Complaints brought by pro se litigants are typically dismissed without prejudice.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (unless there is no indication that the pro se plaintiff will be able to assert a valid claim giving rise to subject matter jurisdiction, leave to amend should be given); *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795–96 (2d Cir. 1999) (per curiam) (pro se complaints generally "not dismiss[ed] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated").  However, the rationale behind affording pro se litigants a "special solicitude" is that "a *pro se* litigant generally lacks both legal training and experience and, accordingly, is likely to forfeit important rights through inadvertence if he is not afforded some degree of protection." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010).  As such, "a lawyer representing himself ordinarily receives no such solicitude at all."  *Id.* at 102.  Although in evaluating the pleadings, I have granted Plaintiff the degree of solicitude normally afforded to pro se litigants without a law degree, I decline to apply such solicitude to dismiss his claims without prejudice.  This is particularly appropriate here where his claims fail on statute of limitations grounds, rendering any amendment highly unlikely to cure the deficiencies.  As such, Plaintiff's claims are dismissed with prejudice.

## V.     Conclusion

For the reasons stated herein, Defendants' motions to dismiss, (Docs. 67, 70), are

GRANTED, and the Complaint is DISMISSED with prejudice.  The Clerk of Court is directed to

terminate the open motions at Documents 67 and 70, and close this case.


SO ORDERED.

Dated: September 21, 2017
      New York, New York

Vernon S. Broderick
United States District Judge